**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ALYCE ANDERSON,

       Plaintiff,

     v.

DAVID P. STEINER, Postmaster
General, United States Postal Service,

       Defendant.

No. 23 CV 15585

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff Alyce Anderson sued her employer, the United States Postal Service, for discrimination, retaliation, and procedural violations during the Equal Employment Opportunity complaint process. When she filed her complaint, she applied to proceed in forma pauperis. The Postal Service moves to dismiss the complaint because, it says, Anderson's allegation of poverty was untrue. For the reasons discussed below, the motion is granted.

## I.    Legal Standards

The Postal Service moves to dismiss Anderson's complaint under 28 U.S.C. § 1915(e)(2)(A), arguing that Anderson misrepresented her financial status when she filed her in forma pauperis application in November 2023.

Under 28 U.S.C. § 1915(e)(2)(A), "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that … the allegation of poverty is untrue." An allegation of poverty is "untrue" if the plaintiff's statements on the IFP form were "deliberate

misrepresentation[s]—'dishonest' or 'false' rather than simply 'inaccurate.'" *Reyes v. Fishel*, 996 F.3d 420, 424 (7th Cir. 2021). I must dismiss the suit if I find the allegation of poverty was false. *Thomas v. Gen. Motors Acceptance Corp.*, 288 F.3d 305, 306 (7th Cir. 2002).

## II.    Facts

Plaintiff Alyce Anderson alleges that the Chicago district human resources manager at the United States Postal Service ignored her "new request for Reasonable Accommodation and a new Reasonable Accommodation Committee Meeting." [59] ¶ 1.[1] Anderson also alleges that Postal Service management officials conspired to commit fraud by ignoring company policy and refusing to respond to her request for a reasonable accommodation committee meeting. [59] ¶ 2. She says that these management employees committed fraud by backdating a response to her request for a new reasonable accommodation committee meeting. [59] ¶ 2.

Anderson also alleges that after she submitted an equal employment opportunity complaint about the fraudulent response, the Postal Service immediately closed her case without authenticating or verifying her complaint. [59] ¶ 3. She says that Postal Service lawyers conspired to defraud her of a fair, impartial, and unbiased EEO proceeding by being hostile and calling her names. [59] ¶ 4. She also alleges that the administrative law judge acted improperly and failed to include instructions on

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed on the top of filings. The facts are taken from plaintiff's amended complaint, [59].

the appeals process or Anderson's rights after denying her request for a hearing. [59] ¶ 4.

### III.   Analysis

#### A.   Motion to Dismiss

Anderson signed her IFP application on October 31, 2023, and filed it on November 2, 2023. [3] at 1–2. Anderson represented in the application that her total monthly take-home pay was $2,800 a month. [3] at 1. She also wrote that she expected $0 in settlement funds. [3] at 1.

After filing a grievance, Anderson was reinstated to her job at the Postal Service, effective August 11, 2023, earning a salary of $72,842. [71-1] ¶¶ 4–5. She received three paychecks in September 2023 for a total of $4,244.53 and two paychecks in October 2023 totaling $4,711.90. [71-1] ¶ 7. Anderson was also notified in August 2023 she would be awarded backpay for a period of 45 days or more, but the letter did not say exactly how long the period was, or how much she could expect to receive. [71-1] ¶ 4; [71-2]. She was issued her backpay award, totaling $47,320.65 after deductions for withholdings for taxes, union dues, retirement accounts, and wage offsets, on February 5, 2024. [71-1] ¶ 8.

Anderson says that she did not misrepresent her finances because her financial hardship did not disappear by November 2023, and that she used her paychecks to clear financial debt she was in, pay current bills, and pay for other purposes. She also says she did not trust or believe that she would receive any settlement money from the Postal Service. Finally, Anderson said she drafted her applications on September 16, 2023, and they were accurate as of that time.

3

But Anderson signed the application on October 31, 2023, when her salary was $4,711.90 for the month—almost $2,000 more than she disclosed. And she received $1,400 more than the $2,800 she disclosed for the month of September. On the day she filed her application, she knew that $2,800 was not her monthly income. She still certified that it was.

That Anderson filed other cases the same day does not excuse that she misrepresented her income on the day that she filed this case. *See Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 554 (7th Cir. 1996) ("Ordinarily, of course, a plaintiff must bear the consequences of his or her procedural lapses and mistakes in pleading, even if the result is the denial of relief which is otherwise well-deserved.").

Even if she had other expenses to cover, "hiding assets is not a permissible alternative to seeking the judge's assistance." *Kennedy v. Huibregtse*, 831 F.3d 441, 443 (7th Cir. 2016). "An applicant has to tell the truth, then argue to the judge why seemingly adverse facts … are not dispositive. A litigant can't say, 'I know how the judge *should* rule, so I'm entitled to conceal material information from him.'" *Reyes*, 996 F.3d at 424 (quoting *Kennedy*, 831 F.3d at 443) (emphasis in original).

And Anderson did not pay the filing fee in this case or correct the record until January 2026, well after she had twice been ordered to update her IFP applications in two separate cases by two separate judges. *Anderson v. Am. Postal Workers Union, AFL-CIO*, No. 23-cv-01117, Dkt. 64 at 3 (Apr. 17, 2024) (Kocoras, J.) (order denying motion to recuse and overruling objection to filing an amended IFP application); *Anderson v. Am. Postal Workers Union, AFL-CIO*, No. 1:21-CV-01417, 2024 WL

4

4723618, at *4 (N.D. Ill. Nov. 8, 2024) (Chang, J.) ("All told, then, in forma pauperis plaintiffs do have an obligation to update the Court if they are later able to pay the filing fee (or even part of it).").

Based on her familiarity with filing cases, including in forma pauperis applications, Anderson was aware of her obligations. At the time she signed her application in this case, her income had changed, and she did not update her application before filing it with the court. She also failed to update her application once she received a check for backpay, had access to a steady income for years, or after she was told to update her IFP applications in two of her other cases. And even if her paychecks went to necessities, Anderson still had an obligation to truthfully report her income and *then* argue why she was still indigent after being paid her full salary. I find that Anderson's misrepresentations were deliberate, and that her application was not simply inaccurate, but false. Because I find her allegation of poverty was untrue, I must dismiss her case. The statute of limitations has passed for Anderson to refile her case, so any dismissal is equivalent to dismissing with prejudice. *Reyes*, 996 F.3d at 425; *Ballard v. Ameren Ill. Co.*, 173 F.4th 946, 949 (7th Cir. 2026) (90-day time limit to bring suit after EEOC issues the complainant a "right to sue" letter); 42 U.S.C. § 2000e-5(f)(1).

### B. Motion to Seal

Anderson moves to seal certain portions of the Postal Service's exhibits in support of its motion to dismiss, arguing the disclosure violated the Privacy Act. The

Postal Service says that it disclosed the information pursuant to the "routine use" exception to the Privacy Act.

There is a "strong judicial norm that judicial proceedings are open to the public." *Matter of Husain*, 866 F.3d 832, 835 (7th Cir. 2017). Documents used in court proceedings that "influence or underpin the judicial decision" are presumptively "open to public inspection unless they meet the definition of trade secret or other categories of bona fide long-term confidentiality." *Al-Nahhas v. 777 Partners LLC*, 129 F.4th 418, 428 (7th Cir. 2025). The categories of bona fide long-term confidentiality are trade secrets, information covered by a recognized privilege, and information required by statute to be maintained in confidence. *Baxter Int'l, Inc. v. Abott Laby's*, 297 F.3d 544, 545 (7th Cir. 2002); *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010).

The details of Anderson's salary and backpay award were necessary to my decision to dismiss her complaint, discussed above. Anderson says that the Privacy Act protects her information from disclosure, and so the information about her salary and backpay award should be sealed.

The Privacy Act bars federal agencies from "disclos[ing] any record which is contained in a system of records by any means of communication to any person" without the consent of the person. 5 U.S.C. § 552a(b). There is no dispute that Anderson did not consent to the disclosure. But the Privacy Act does have exceptions that allow for disclosure. One such exception is the "routine use" exception, which is "the use of such record for a purpose which is compatible with the purpose for which

6

it was collected." 5 U.S.C. § 552a(a)(7), (b)(3). To fall under the exception, a record must be kept in a system of records, and the existence and character of the system must be published in the Federal Register. 5 U.S.C. § 552a(e)(4). The Postal Service has published notice in the Federal Register about its system of records and sets out eleven "standard routine uses" applicable to many of its records, including the record categories at issue here. *Privacy Act of 1974; System of Records*, 70 Fed.Reg. 22516-01, 22518, 22521 (Apr. 29, 2005). One standard routine use is "disclosure incident to legal proceedings." *Id.* at 22518, 22521. Under that use, "[w]hen the Postal Service is a party to or has an interest in litigation or other legal proceedings before a Federal … adjudicative … body, … arguably relevant records may be disclosed before that body and/or to the Department of Justice or other legal counsel representing the Postal Service or its employees." *Id.* at 22521.

To fit within the confines of the exception, an agency's disclosure of a record must be both (1) "fit for a purpose which is compatible with the purpose for which it was collected" and (2) "within the scope of a routine use notice published by the agency." *See Chicakli v. Tillerson*, 882 F.3d 229, 233 (D.C. Cir. 2018); *N.L.R.B. v. U.S. Postal Serv.*, 660 F.3d 65, 67 (1st Cir. 2011). The second requirement is easily shown—the Postal Service has an interest in this litigation, and the records are relevant to the litigation. The question is whether the disclosure was "fit for a purpose which is compatible with the purpose for which it was collected." *Chicakli*, 882 F.3d at 233.

The Postal Service disclosed Anderson's salary and backpay award in support of its argument that Anderson's complaint must be dismissed because her allegation of poverty was untrue. According to the Postal Service's notice of system of records, the purposes of collecting employee salary information and records related to "compensation and monetary awards" are to perform routine personnel functions, have a source of readily available information on employees for local administrative purposes, administer the grievance and appeal procedure for nonbargaining unit employees, match vacancies to the most qualified candidates, and provide public relations information on Postal Service management personnel. *Privacy Act of 1974; System of Records*, 70 Fed.Reg. at 22522. Records including payroll information are collected for the purposes of supporting all necessary compensation and payroll activities and related management functions, administering monetary awards programs, and detecting improper payment related to injury compensation claims. *Id.* at 22525–26. I find that disclosing Anderson's salary from 2023 was compatible with the purposes of collecting the information, which includes using the information in other adjudicative processes (grievance and appeals processes) and detecting improper payments (in injury compensation claims). This is supported by the category of personnel records including reference copies of discipline or adverse action, which the Federal Register says are only to be used "to refute inaccurate statements by witnesses before a judicial or administrative body." *Id.* at 22522. If the disclosure of personnel records to courts as part of the litigation process was not a

routine use of the personnel records, there would be no need to limit the use of discipline or adverse action records to one specific use in litigation.

In addition, records relating to a Postal Service employee involved in labor or employment litigation, including names, "postal assignment information, work contact information, finance number(s), duty location, pay location, assigned case or docket numbers, and other details related to the nature of the litigants and litigation subject matter" are collected to "provide legal advice and representation in … labor or employment litigation, and miscellaneous civil actions and litigation." *Id.* at 22540. The information at issue here would also fall under this category, so the disclosure was compatible with the purposes in those categories.

To the extent Anderson says that the United States Attorney's Office is violating the Privacy Act, the Department of Justice maintains records "for the purpose of litigating or otherwise resolving civil cases or matters" and a routine use of the records includes disclosure to the courts. *Privacy Act of 1974; Notice of Modified Systems of Records*, 63 Fed.Reg. 8659-02, 8666–68 (Feb. 20, 1998).

Because the records at issue are not required by law to be maintained in confidence, and no other privilege or statute requires their sealing, I decline to seal them.

### C.      Motion for Sanctions

Anderson also seeks sanctions against the Postal Service for disclosing her former salary and backpay award.

9

District courts have the "inherent authority" to sanction parties. *See Sanders v. Melvin*, 25 F.4th 475, 481 (7th Cir. 2022). Because of the "potency" of this implied power, it "must be exercised with restraint and discretion." *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)). I must "evaluate the appropriateness of any given sanction" and make factual findings to support any sanction I impose. *Greyer v. Ill. Dep't of Corrs.*, 933 F.3d 871, 877 (7th Cir. 2019).

As discussed, because the records were disclosed as part of a "routine use," the Postal Service did not violate the Privacy Act in disclosing Anderson's salary and backpay award. But even if the records were not compatible with the purposes for which they were collected, the Postal Service did not willfully violate the Privacy Act. 5 U.S.C. § 552a(g)(1)(D), (4) (any disclosure in violation of the Privacy Act must be "willful").

To be a willful violation of the Privacy Act, the evidence of the Postal Service's conduct must meet a standard "greater than gross negligence, focusing on evidence of reckless behavior and/or knowing violations of the Act on the part of the accused." *Moskiewicz v. U.S. Dep't of Agric.*, 791 F.2d 561, 564 (7th Cir. 1986). Even if the disclosures were unauthorized, "the employees who were involved reasonably believed that they were allowed access to [Anderson's] file as necessary to investigate" her ability to proceed in forma pauperis. *Coburn v. Potter*, 329 Fed.Appx. 644, 646 (7th Cir. 2009). The agency knew that her representations weren't true, and to prove that, it was required to disclose the records. There was no intent to violate the Privacy Act; rather, there was an intent to provide evidence for the argument the Postal

10

Service was making. *Id.* "Accordingly, even if there had been a technical violation," the Postal Service will not be sanctioned for disclosing Anderson's past salary and backpay award. *Id.* at 647.

## IV.     Conclusion

The defendant's motion to dismiss, [70], is granted. Because plaintiff's allegation of poverty was untrue, her claims are dismissed with prejudice. The plaintiff's motions to seal and for sanctions, [75] and [76], are denied. All claims having been dismissed, the Clerk shall enter final judgment and terminate this civil case.


ENTER:

_____
Manish S. Shah
United States District Judge

Date: June 29, 2026

11